# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA,
### MONTGOMERY DIVISION

**DARREN ANDERSON, et al.,**    §
                                §
    **Plaintiffs,**           §
                                §        **CIVIL ACTION NO.**
**v.**                          §        **2:06-cv-00951-MEF-DRB**
                                §
**WAYNE FARMS, LLC,**           §
                                §
    **Defendant.**            §

## PLAINTIFFS' MOTION FOR AN ORDER PERMITTING COURT SUPERVISED NOTICE TO EMPLOYEES OF THEIR OPT-IN RIGHTS AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, DARREN ANDERSON, et al., ("Plaintiffs"), requests the entry of an Order permitting under court supervision, notice to all Defendant WAYNE FARMS, LLC's ("Wayne" or "Defendant") Union Springs plant hourly 1st and 2nd processing employees, as defined in Plaintiffs' Complaint, over the last three (3) years, whose hours worked were recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked but instead are recorded under a system known as line time, master time, master key, gang time, etc., collectively referred to herein as "master time". As a result of Defendant's illegal pay practices each 1st and 2nd processing employee described above did not receive full payment for required pre-production

1

line and post-production line activities that are necessary, integral, and indispensable to their overall employment responsibilities, such as the time it takes to clear security and the compensable walk time that ensues thereafter, donning and doffing protective and sanitary equipment, cleaning and sanitizing that equipment as well as themselves, wait time associated with cleaning and sanitizing equipment as well as themselves, walking to and from the production line from their locker or dressing area after already performing compensable activities, time deducted as unpaid breaks that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable, waiting in line to return required supplies, tools, and other equipment needed for line activities, time spent waiting at the production line prior to the start of the master time clock and time spent continuing work after the master time clock has stopped, and time spent walking to and clearing security at the end of the day. In support of these individuals' opt-in rights, Plaintiffs state as follows:·

## MOTION FOR AN ORDER PERMITTING COURT SUPERVISED NOTICED TO EMPLOYEES OF THEIR OPT-IN RIGHTS

1.      Section 16(b) of the Fair Labor Standards Act of 1938 ("FLSA") provides, among other things, that an action to recover unpaid minimum wages or unpaid overtime compensation may be maintained

against any employer in any federal or state court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. See 29 U.S.C. § 216(b).

2.    As stated in Plaintiffs' Complaint, Plaintiffs are current or former 1st and 2nd processing employees authorized by the FLSA to sue in their own names on behalf of themselves individually and other employees similarly situated. Plaintiffs are current and former 1st and 2nd processing employees of Defendant who have brought this action on behalf of all current and former similarly situated 1st and 2nd processing employees, employed at the Union Springs Alabama Plant, whose hours worked were recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked but instead are recorded under a system known as line time, master time, master key, gang time, etc., collectively referred to herein as "master time" and within the last three (3) years did not receive full payment for required pre-production line and post-production line activities that are necessary, integral, and indispensable to their overall employment responsibilities, such as the time it takes to clear security and the compensable walk time that ensues thereafter, donning and doffing protective and sanitary equipment, cleaning and sanitizing that equipment as well as themselves, wait time

3

associated with cleaning and sanitizing equipment as well as themselves, walking to and from the production line from their locker or dressing area after already performing compensable activities, time deducted as unpaid breaks that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable, waiting in line to return required supplies, tools, and other equipment needed for line activities, time spent waiting at the line prior to the start of master time clock and time spent continuing work after the master time clock has stopped, and time spent walking to and clearing security at the end of the day.

3.    Plaintiffs know that their claims are typical of the claims of other former and current 1st and 2nd processing employees employed by Defendant, and typical of the claims of all members of the representative class described below. *See* Affidavits of Kevin K. Keith, Michael Lawrence, Ruby Stephens, Darlene Sullen, Artrica Moore, Katrina Murray, and Thelma D. Peebles, at ¶¶ 5-9 attached as Exhibit 1; *See* Affidavits of Ada M. Townsend, Martha A. Tuggles, Edna Coleman, Carolyn Dowdell, Diane Finney, Margaret Foster, Robert Goode, Duane L. Harris, Antwain Harris, Charlena Hooks, and Kreshan Johnson, at ¶¶ 5-9 attached as Exhibit 2. *See* Affidavits of Spencer Johnson Jr., Eddie Mae Hough, and Alonzo Jackson, Evelina Jackson, Doretha Johnson, Brenda Ann Johnson, Bruce Jones,

Dwight Jones, Loretta R. Jones, Lucy Jones and Vanessa Babers, at ¶¶ 5-9 attached as Exhibit 3; *See* Affidavits of Mary N. Bandy, Ronald Davie, Mary A. Dulaney, Mamie Fitzpatrick, Shona Hampton, Quinosha Hooks, Henry Harris, Karen Lee, Annie Pearl Mack, Frankie Maddox, Helen L. Mason, Sheila McClain, George Palm, Danny Parker, and Lanett Patterson at ¶¶ 5-9 attached as Exhibit 4; *See* Affidavits of Rachel Penn, Ruby Hall Person, Ollie M. Pugh, Tracy Robbins, Christine Rodgers, Wendy Tarver, Lillie B. Tarver, Marche Stewart, Mary L. Thrasher, Jeraldine R. Weaver, Imagene Williams, and Rubye J. Wright, at ¶¶ 5-9 attached as Exhibit 5.

4.     The representative class consists of all current and former 1st and 2nd processing employees who worked for Defendant at any time within the last three (3) years, whose hours worked were recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked but instead are recorded under a system known as line time, master time, master key, gang time, etc., collectively referred to herein as "master time", and who were subjected to Defendant's practice and policy of not paying for work described above and any overtime compensation for hours worked in excess of forty (40) as a result of this practice.

5.    As a result of such compensation practices, potential class members did not receive payment in full for required pre-production line and post-production line activities that are necessary, integral, and indispensable to their overall employment responsibilities, such as the time it takes to clear security and the compensable walk time that ensues thereafter, donning and doffing protective and sanitary equipment, cleaning and sanitizing that equipment as well as themselves, wait time associated with cleaning and sanitizing equipment as well as themselves, walking to and from the production line from their locker or dressing area after already performing compensable activities, time deducted as unpaid breaks that due to walk time, donning, doffing and wash times the unpaid breaks should be compensable, waiting in line to return required supplies, tools, and other equipment needed for line activities, time spent waiting at the line prior to the start of master time clock and time spent continuing work after the master time clock has stopped, and time spent walking to and clearing security at the end of the day.

6.    The one hundred and eighty nine (189) named Plaintiffs, as well as one hundred and thirty six (136) additional "opt-in Plaintiffs,"

nineteen (19) from 1st processing and one hundred and twenty one (121) from 2nd processing, have filed Notices of Consent to Join.[1]

7.      Simply put, all other 1st and 2nd processing employees falling within the class definition are owed full payment for the work described herein and the right to participate in this litigation. Defendant has acted or refused to act on grounds generally applicable to these employees thereby making the same relief appropriate with respect to the class as a whole. Moreover, the common questions of law and fact predominate over any questions affecting only named Plaintiffs, and a collective action is superior to other available methods for the fair and equitable adjudication of the controversies between the representatives described above and the named Defendant.   And, although the class of current and former 1st and 2nd processing employees is identified and certain, the individual members of the class cannot be completely identified absent access to Defendant's books and records.

WHEREFORE, Plaintiffs respectfully request that the Court permit and supervise notice, in English and Spanish, to all current and former 1st

---

[1] Recently, United States Magistrate Judge Frank Lynch, Jr., permitted notice to proceed stating that: "...the Affidavit of [a single opt-in Plaintiff] shows that at least one other co-worker desires to join the suit, thereby raising the Plaintiff's contention beyond one of pure speculation." Order on Plaintiff's Motion for an Order Permitting Court Supervised Notice to Employees of Their Opt-in Rights, *Larry Guerra v. Big Johnson Concrete Pumping, Inc.*, CASE NO.: 05-14237 (S.D. Fla. May 17, 2006).

and 2nd processing employees whose hours worked were recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked but instead are recorded under a system known as line time, master time, master key, gang time, etc., collectively referred to herein as "master time" and within the last three (3) years did not receive full payment for required pre-production line and post-production line activities that are necessary, integral, and indispensable to their overall employment responsibilities, such as the time it takes to clear security and the compensable walk time that ensues thereafter, donning and doffing protective and sanitary equipment, cleaning and sanitizing that equipment as well as themselves, wait time associated with cleaning and sanitizing equipment as well as themselves, walking to and from the production line from their locker or dressing area after already performing compensable activities, time deducted as unpaid breaks that due to walk time, donning, doffing and wash times the unpaid breaks should be compensable, waiting in line to return required supplies, tools, and other equipment needed for line activities, time spent waiting at the line prior to the start of master time clock and time spent continuing work after the master time clock has stopped, and time spent walking to security at the end of the day and time spent clearing security.

8

## MEMORANDUM OF LAW

### A.    Introduction

The FLSA authorizes employees to bring an action individually and on behalf of others similarly situated. *See* 29 U.S.C. § 216(b). The FLSA provides, in part, that:

> An action to recover the liability [for unpaid wages and overtime] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other similarly situated. ***No employee shall be a party Plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.***

*See id.* (emphasis added).

Defendant, WAYNE FARMS, LLC, a Delaware Corporation, holds itself out as the nation's sixth largest chicken company producing almost 1.5 billion pounds of chicken annually. *See* excerpts of Defendant's website attached as Exhibit 6. Wayne also touts itself as a food safety leader, stating food safety is their most important job. *See* excerpts of Defendant's website attached as Exhibit 7.

As expected, Defendant as a food safety leader requires Plaintiffs to clear security, verifying Plaintiffs' identities, before allowing access to

9

Defendants' facility.  Yet in spite of this, Defendant does not pay Plaintiffs for this time.  *See* Affidavits at ¶6 attached as Exhibits 1-5.

As part of its processing operation, Wayne employs hourly processing employees to provide labor to assist in the processing of chickens.  *See* Affidavits at ¶4, attached as Exhibits 1-5.

Hourly processing employees primarily work in 1st processing where chickens are placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled or 2nd processing where chickens after completing 1st processing are placed or hung on lines and are further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc. for delivery to plant customers.  *See* Affidavits at ¶5, attached as Exhibits 1-5.

Because the work performed is unskilled or at best in some instances semi-skilled, all work is similar in nature regardless of hourly employees' titles, supervisor or department.  *Id.*    All hourly employees are interchangeable and they are required to work open positions throughout the plant as production requirements dictate.  *See id.*  Therefore, employees do not have set job responsibilities and all employees within 1st or 2nd processing perform similar tasks and thus are alike.

Plaintiffs are current and former employees of Defendant. During their employment with Defendant, Plaintiffs were paid on an hourly basis. *See* Affidavits at ¶4, attached as Exhibits 1-5.

While employed by Defendant, Plaintiffs and other similarly situated 1st and 2nd processing employees, regularly were not paid for all hours worked and those unpaid hours in excess of forty (40) hours per workweek during their employment with Defendant. *See* Affidavits of **1st processing employees,** at ¶4, ¶8, attached as Exhibits 1-2; *See* Affidavits of **2nd processing employees,** at ¶4, ¶8 attached as Exhibit 3-5.

Plaintiffs observed that Defendant paid all of their co-employees/1st and 2nd processing employees in the same regard. *See id.* at ¶8. Thus, as a result, Plaintiffs and other similarly situated 1st and 2nd processing employees did not receive compensation for all hours worked and overtime for unpaid hours worked over forty (40) each workweek. *See id.*

Plaintiffs assert that Defendant's above compensation policies violate the FLSA's overtime provisions requiring the payment for all hours worked and of time and one half overtime compensation for each hour worked over forty (40) in a workweek. That is, because Defendant failed to pay all hours worked and time and one half for each hour of overtime worked, Plaintiffs maintain that such compensation practices have adversely affected the rights

11

of each member of this collective action. Therefore, Plaintiffs seek authorization to facilitate notice to each of Defendant's 1st and 2nd processing employees who were subjected to the illegal pay practices described above at any time within the last three (3) years.

Plaintiffs further request that they be permitted to give such notice as approved by this Court to all such class members of their rights to opt-in to this case by executing an appropriate consent as required by Section 216(b) of the FLSA. Plaintiffs' affidavits, and the affidavits of additional "opt-in Plaintiffs"[2] who have joined this action since the time it was filed, attest that Defendant's other 1st and 2nd processing employees were subject to the same pay policy, plan and practice, had similar duties, were paid in the same manner, and thus, are similarly situated for purposes of facilitating notice under the FLSA. Plaintiffs furthermore attest that should this Court grant notice, additional Plaintiffs will come forward to participate. *See* Affidavits at ¶10, attached as Exhibits 1-5.

### B.    Applicable Standards For Collective Actions

FLSA Rule 216(b) collective actions operate much differently than typical class action suits under Rule 23 of the Federal Rules of Civil Procedure. Under 29 U.S.C. § 216(b) of the FLSA, an employee belonging

---

[2] Since the inception of this litigation, numerous Plaintiffs have filed Opt-in Consents. See Court Document Numbers 20, 21, 22 and 31.

to a similarly situated class of Plaintiffs must "opt-in" to the class by filing a written consent with the Court in order to be bound by the outcome of the case. Without signing and filing such an express consent, employees are not bound by the outcome of the litigation. *See id.* This is just the exact opposite of traditional Rule 23 class actions in which a Plaintiff initiating a class action automatically represents every member of the class that has not expressly "opted-out."

Because of this requirement to affirmatively opt-in and because the statute of limitation does not toll for the individual until he files his opts-in consent with the court, a delay in conditional certification, i.e. court supervised notice, prejudices putative class members and benefits Defendant. Plaintiffs respectfully submit, the longer it takes for the Court to issue notice the more likely large numbers of putative class members potentially will lose their right to join this litigation, or at best, retain their right to participate but suffer a reduction in back-pay damages. In accordance with 29 U.S.C. § 216(b), persons wishing to join an FLSA collective action must affirmatively opt in to the suit by filing a notice of consent. Under the statute, "[n]o employee shall become a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought".

13

29 U.S.C § 216(b). For each plaintiff who opts in to the case after the filing of the complaint, the action is not considered commenced for purposes of the statute of limitations until the date on which the plaintiff's written consent is filed with the court. 29 U.S.C § 256; *see also* 29 U.S.C § 255(a). Case law, recognizing a fundamental difference between Rule 23 class actions and Rule 216(b) collective actions, has also interpreted the statutory sections as requiring all plaintiffs in a collective action under the FLSA to file written consents for statute of limitations purposes. Signed consents filed after the filing of the complaint do not relate back to the date the complaint was filed. *Grayson v. K Mart Corp.*, 79 F.3d 1086 at 1106 (11th Cir. 1996); *O'Connell v. Champion Int'l Corp.*, 812 F.2nd 393 at 394 (8th Cir. 1987); *La Chapelle v. Owens Illinois, Inc.*, 513 F.2nd 286, 288, 289 (5th Cir. 1975).

To that affect, in *Hoffman-La Roche, Inc. v. Sealing*, 110 S. Ct. 482 (1989), the Court ruled that not only did trial courts have authority to compel Defendant-employers to provide names and addresses of potential Plaintiffs through the pretrial discovery process, but that this authority also included sending court-authorized consent forms to potential Plaintiffs. *See id.* There, the Court addressed the issue of whether the district court may play any role on prescribing the terms and conditions of communication from the named Plaintiffs to the potential members of the class on whose behalf the

collective action has been brought. *See id.* The Court determined that district courts have discretion in appropriate cases to implement 29 U.S.C. §216(b), by facilitating notice to potential Plaintiffs. *See id* at 486. This authority arises from the Court's broad discretionary power to manage the process of joining multiple parties in an orderly manner. *See id.*

Trial court involvement in the notice process is inevitable in cases with numerous Plaintiffs where written consent is required by statute. Thus, it lies within the discretion of the trial court to begin its involvement early, at the point of the initial notice, rather than at some later time. *See id.* Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action. *See id.* at 487. Additionally, the benefits of the class action provisions of 29 U.S.C. §216(b), "depend on employees receiving accurate and timely notice concerning the pendency of the collective action so they can make informed decisions about whether to participate." *Id.* at 486. The question of notification in a FLSA class action arose again in *Dybach v. State of Florida, Department of Corrections*, 942 F .2d 1562 (11th Cir. 1991), where the Eleventh Circuit found that an adult probation officer was non-exempt and therefore entitled to overtime compensation for all hours worked over forty (40) in multiple workweeks. *See id.* The Eleventh Circuit

also held that the district court had authority to issue an order requiring notice to "similarly situated" employees of the Defendant affording them the opportunity to "opt-in." *Id.*

The Eleventh Circuit utilizes a two-tiered approach to certification of an opt-in class pursuant to 29 U.S.C. § 216(b). *See Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F .3d 1208, 1219 (11th Cir. 2001 ) (stating that the two-tiered approach "appears to be an effective tool for district courts to adopt in future cases"). Under this two-tiered approach, the court makes an initial determination, based <u>solely</u> upon the pleadings and any affidavits, whether notice of the action should be given to potential class members. *See id.* at 1218. Because the court has minimal evidence at this stage of the proceedings, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class. *See id.* Thereafter, a second, more rigorous factual determination is made as to whether the potential opt-in Plaintiffs are similarly situated. *See id.* [3]

---

[3] Plaintiffs anticipate that Defendant will argue that Plaintiffs and their co-employees are somehow dissimilar or individual defenses apply and that class certification would therefore be inappropriate. However, the fact remains that such an argument regarding the factual nature of Plaintiffs' claims and Defendant's defenses thereto are irrelevant at this stage of the notification process. Specifically, a factual analysis regarding the "individualized" nature of Plaintiffs' claims and Defendant's defenses is more appropriate *via* a Motion to Decertify at the conclusion of discovery, not at Stage I. *See Pendlebury v. Starbucks Coffee Co.,* 2005 WL 84500 * 3 (S.D. Fla. Jan. 3, 2005) (Marra, J.) (Judge Marra did not consider individualized defenses in permitting Stage I notification); *Cameron-Grant v. Maxim Healthcare Services., Inc.,* 347 F.3d 1240, 1243

This two-tiered approach was utilized by the Middle District of Alabama in *Harper v. Lovett's Buffet Inc.,* 185 F.R.D 358 (M.D. Ala. 1999). The Court found it appropriate to conditionally certify a class of all hourly restaurant employees working at a Dothan restaurant after Plaintiffs presented fifteen (15) affidavits, twelve (12) signed by servers, one (1) signed by a cook, one (1) signed by a hostess and one (1) signed by a food preparation worker, where the affidavits showed they had all been subject to the practice of managers clocking them out before work was completed resulting in possible violations of minimum wage and maximum hour

---

(11th Cir. 2003) ("The first determination is made at the so-called "notice stage"....Because the Court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in a conditional certification of a representative class. The action proceeds as a representative action throughout discovery."); *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1096 (11th Cir. 1996) ("We hold that section 216(b)'s "similarly situated" requirement is less stringent than that for joinder under Rule 20(a) or for separate trials under rule 42(b)."); *Felix De Asencio v. Tyson Foods, Inc.,*130 F.Supp.2d 660, 663 (E.D. Pa. 2001) ("While this information [submitted by Defendant] may play a more significant role after discovery and during an analysis of the second and final similarly situated tier, Plaintiffs have advanced sufficient evidence to meet their low burden at this first tier of the similarly situated question."); *see also Brown v. Money Tree Mortgage, Inc.,* 222 F.R.D. 676, 682 (D. Kan. 2004) ("[T]he court will examine the individual Plaintiffs' disparate factual and employment settings, as well as the various defenses available to the Defendant which appear to be individual to each Plaintiff, during the 'second stage' analysis after the close of discovery."); *Leuthold v. Destination America,* 224 F.R.D. 462, 468 (N.D. Cal. 2004) ("Defendants' arguments in their opposition brief focus on the more stringent second tier analysis and raise issues that may be more appropriately addressed on a motion for decertification after notice is given to the proposed class."); *Goldman v. Radioshack Corp.,* No. Civ.A. 2:03-CV-032, 2003 WL 21250571, at *8 (E.D.Pa. Apr. 16, 2003) ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the Defendant."). Thus, setting Defendant's anticipated factual arguments aside for purposes of Plaintiff's Stage I Motion, Plaintiffs clearly have met their burden of proof on the "similarly situated" prong under *Hipp.*

provisions of the FLSA. *See id.* at 363, 364, 365. Citing *Grayson v. K Mart Corp.*, 79 F.3d at 1086, 1096, (11th Cir. 1996), the Court stated Plaintiffs bear the burden to establish that they are similarly situated. This burden, which is not heavy, may be met by detailed allegations supported by affidavits. *Id at 1097.*

Plaintiffs anticipate Defendant may ask for a period of time to conduct discovery in order to respond to this motion. Plaintiffs respectfully oppose such a period for discovery because as stated above, at this initial stage, the conditional certification stage, the Court should base its decision solely on the pleadings and attached affidavits. Defendant wishes to engage in discovery to attempt to draft a response that will decertify the class before the class even exists. Defendant's response to this motion will essentially be a motion to decertify. If unsuccessful they will attempt a second time to decertify the class after notice is given, discovery is complete and the class is certain. This second bite at the apple is fundamentally unfair and it is not consistent with the two tiered certification process utilized by the 11th Circuit when addressing collective actions. Defendants should not be allowed to decertify the class before the class exists.

Furthermore, not allowing the action to move forward conditionally as a collective action after Plaintiffs have satisfied the relatively low burden of

similarity reduces the opportunity to resolve this action before trial. Without the certainty of class size, Defendants are unable to determine how many existing claims will be left outstanding if they settle this action. As mentioned before, unlike a Rule 23 class action, in a FLSA 216(b) collective action if individuals do not join this action they are not bound by a judgment or settlement and they are free to bring an action on their own in the future. Without class certification there are potentially thousands of claims left unresolved and Defendant no doubt will have to be mindful of those claims when making decisions with regards to the claims at hand. Therefore, in order to avoid similar future FLSA claims Defendant will be unlikely to attempt to settle Plaintiffs' claims for fear of inviting future litigation.

There are questions of law or fact common to Defendant's other 1st and 2nd processing employees and the claims of the named Plaintiffs in the instant matter. Indeed, Plaintiffs' claims are typical of the claims of the other individuals in their positions. For purposes of defining the "similarly situated class" pursuant to 29 U.S.C. § 216(b), Plaintiff need only demonstrate that the defined class is comprised of representatives who are similarly situated to Plaintiffs with regard to Defendant's payroll practices and record keeping requirements. *See* 29 U.S.C. § 216(b); *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562 (11th Cir. 1991). There is no

requirement of "strict symmetry" or "absolute identity"; rather potential class members must meet only a "sufficiently similar" standard. *Glass v. IDS Financial Services, Inc.,* 778 F. Supp. 1029, 1081 (D. Minn. 1991) (an allegation that a single decision, policy or plan precipitated the challenged action was sufficient to define the class).

Here, Defendant employed numerous 1st and 2nd processing employees in Union Springs, Alabama. At some period of time during the last three (3) years, each of these 1st and 2nd processing employees performed labor for Defendant which included assisting in the processing of chickens. These 1st and 2nd processing employees were paid on an hourly basis, and regularly were not paid for all hours worked and worked more than forty (40) hours per workweek. As a result of this practice, Defendant regularly failed to pay their 1st and 2nd processing employees proper compensation owed as required by the FLSA.

Based upon the Complaint allegations and the above-referenced Affidavits, Plaintiffs have satisfied the applicable burden of persuasion that a colorable basis exists for determining that others similarly situated to Plaintiff exist.

Here, a collective action (as they are termed under the FLSA) is sought as the Defendant has acted or refused to act on grounds generally

applicable to the class (Defendant's current and former 1st and 2nd processing employees who were subjected to Defendant's practice and policy of not paying all hours worked and overtime compensation for hours worked over forty (40) in a workweek), thereby making appropriate the same relief with respect to the class as a whole. Additionally, questions of law or fact common to all 1st and 2nd processing employees as described in the class definition predominate over any questions affecting only individual members. Thus, a collective action is superior to other available methods for the fair and efficient adjudication of this controversy. Plaintiffs seek authorization to provide: (1) the proposed "Notification" letter, attached as Exhibit A, to be sent to all similarly situated employees; along with the (2) the proposed "Notice of Consent to Join" form, attached as Exhibit B, in English and Spanish, which similarly situated employees can complete, sign, and file in this matter.

## CONCLUSION

Plaintiffs have met their burden to facilitate notice to potential class members under Eleventh Circuit precedent. Accordingly, Plaintiffs respectfully request that notice be permitted and supervised and that notice be sent to all current and former 1st and 2nd processing as described in the class definition.

Dated:  March 5, 2007                 Respectfully submitted,

**/s ROBERT CAMP**
ROBERT CAMP
BERNARD NOMBERG
LANCE SWANNER
SAMUEL A. CHERRY, JR.
**THE COCHRAN FIRM**
505 North 20th Street, Suite 825
Birmingham, AL  35203
Tel: 205-244-1115
Fax: 205-244-1171
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2007, I electronically filed the

foregoing with the Clerk of the District Court using the CM/ECF system,

which sent notification of such filing to:

Dorman Walker                    Lisa J. Sharp
dwalker@balch.com                lsharp@balch.com

Wendy A. Madden                  Pepper Crutcher, Jr.
wmadden@balch.com                pcrutcher@balch.com

/s/ Robert J. Camp
**ROBERT J. CAMP**

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
MONTGOMERY DIVISION**

*This is a Court-Authorized Notice and is not a Solicitation from a Lawyer.
The Court Has Made No Finding as to the Merits of the Case at this Time*

*IF YOU ARE OR WERE, AT ANY TIME DURING THE PAST THREE (3) YEARS AN HOURLY PAID 1st or 2nd PROCESSING PRODUCTION EMPLOYEE, AT THE WAYNE FARMS UNION SPRINGS ALABAMA PLANT, WHO WAS NOT FULLY PAID REGULAR TIME OR OVERTIME FOR REQUIRED PRE-PRODUCTION LINE AND POST-PRODUCTION LINE ACTIVITIES SUCH AS THE TIME IT TAKES TO CLEAR SECURITY AND THE WALKTIME THEREAFTER, DONNING AND DOFFING PROTECTIVE AND SANITARY EQUIPMENT, CLEANING AND SANITIZING EQUIPMENT AS WELL AS YOURSELF, WAIT TIME ASSOCIATED WITH CLEANING AND SANITIZING EQUIPMENT AS WELL AS YOURSELF, WALKING TO AND FROM THE PRODUCTION FROM YOUR LOCKER OR DRESSING AREA, TIME DEDUCTED AS UNPAID BREAKS THAT DUE TO WALKTIME AND OTHER ACTIVITIES ARE OTHERWISE COMPENSABLE, TIME SPENT WAITING IN LINE TO RETURN REQUIRED SUPPLIES, TOOLS, AND OTHER EQUIPMENT, TIME SPENT WAITING AT THE LINE PRIOR TO THE START OF THE MASTERTIME CLOCK AND TIME SPENT WALKING TO AND CLEARING SECURITY AT THE END OF THE DAY, A COLLECTIVE ACTION LAWSUIT MAY AFFECT YOUR RIGHTS*

- DARREN ANDERSON, et al., ("Plaintiffs"), former hourly paid production employees who were paid "master time" while employed with WAYNE FARMS LLC ("Wayne" or "Defendant"), have sued Defendant in federal court alleging that Defendant improperly failed to pay them for all hours worked and overtime hours worked in excess of forty (40) during their employment with Defendant. As a result of these alleged practices, Plaintiffs maintain that they were unlawfully deprived of full and proper regular time and overtime compensation due to them under the FLSA. The case name is, DARREN ANDERSON, et al., v. WAYNE FARMS, LLC: CIVIL ACTION NUMBER: **2:06-cv-00951-MEF-DRB**.

- To date, Three hundred and twenty five (325) other hourly paid 1st or 2nd processing production employees have consented to join the lawsuit as plaintiffs.

- The Court has permitted Plaintiffs to send Notice to all similarly situated current and former hourly paid 1st and 2nd processing production employees, paid under a master time system, of Defendant at any time during the past three years, so that they may be permitted to "opt-in" to, or join, this lawsuit to assert their similar legal rights.

- The Court has not yet decided whether Defendant has done anything wrong or whether this case will proceed to trial. There is no money available now and no guarantees that there will be. However, you have a choice to assert your legal rights in this case.

| YOUR LEGAL RIGHTS & OPTIONS | |
|---|---|
| Do Nothing | **Do Nothing. Lose Nothing (except resulting from the passage of time).** By doing nothing, you retain your legal rights to bring a separate suit against WAYNE (within the applicable statute of limitations period) for allegedly unpaid regular and overtime compensation. If money or benefits are later awarded in this case, you will not share in them. |
| Ask to Be Included | **Complete Opt-in Consent Form.** By "opting in," you gain the possibility of receiving money or benefits that may result from a trial or settlement, but you give up your right to separately sue WAYNE for the same legal claims brought in this lawsuit. If you choose to "opt-in" to this lawsuit, you may be required to participate in depositions and/or provide written responses in support of your claims. |

Your options are included in this Notice to Opt-in, you must complete the Opt-in Consent Form and forward it to the attorneys designated in the Notice on or before _____, 2007. If you have any questions or concerns, please contact:

**ROBERT J. CAMP, Esquire**
**THE COCHRAN FIRM**
**505 North 20th Street, Suite 825**
**Birmingham, AL 35203**
**Tel: 1-800-THE-FIRM**
**Fax: 205-244-1171**
*Counsel for Plaintiffs*

**The law prohibits anyone from discriminating or retaliating against you for taking part in this case. If you believe that you have been penalized, disciplined, punished, threatened, intimidated, or discriminated against in any way as a result of your receiving this notification, your considering whether to complete and submit the Notice of Consent, or your having submitted the Notice of Consent, you may contact THE COCHRAN FIRM at the number provided above.**

3

# EXHIBIT B

## CONSENT TO JOIN SUIT AS PARTY PLAINTIFF

**TO:   CLERK OF THE COURT AND COUNSEL OF RECORD**


_____ states the following:
                   [Print Name]

1.    I am over 18 years of age and competent to give the following consent in this matter.

2.    I am currently, or was formerly employed, by _____ at
                                                                    [Name of plant]
      the facility located in _____.  I worked at this location from
                                        [City/State]
      _____ to _____.
              [Date]              [Date, or if still working write "present"]

3.    I understand that this suit is being brought to recover compensation for pre- and post-production time activities from my employer.  I also understand that the lawsuit may seek recovery for unpaid production time.  I understand that the suit is brought pursuant to both federal law and applicable state statutes, if any.

4.    I believe I have not been paid for all compensable time, which I have worked, including overtime.

5.    I hereby consent and agree to be a plaintiff herein and to be bound by any settlement of the case or adjudication by the Court.

6.    I understand that this suit may be brought as a class action covering employees at the _____ plant in _____, and
                                        [Name of Plant]                    [City/State]
      possibly other plants owned by _____.  If brought as a class
                                                    [Name of Plant]
      action under either federal or state law, I agree to be a named Plaintiff in such class.

I swear or affirm that the foregoing statements are true to the best of my knowledge.

      DATED the _____ day of _____, 2007.


_____        _____
[PRINT NAME]                            [SIGN NAME]

**EXHIBIT 1**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA,
### NORTHERN DIVISION

DARREN ANDERSON, et al.,    §
            §
  Plaintiffs,      §
            §   **CIVIL ACTION NO.**
v.            §  **2:06-cv-00951-MEF-DRB**
            §
WAYNE FARMS LLC.,     §
            §
  Defendant.     §
            §

## AFFIDAVITS/DECLARATIONS OF

### KEVIN K. KEITH,  MICHAEL LAWRENCE, RUBY STEPHENS, DARLENE SULLEN, ARTRICA MOORE,  KATRINA MURRAY, THELMA  D. PEEBLES.

# DECLARATION:

1.     My name is _Kevin K. Keith_.

2.     I am a Plaintiff in this action.

3.     I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.     To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of ___Bullock___, State of _AL_, from approximately ___03-08-00___ until ___President___.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.     During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.     During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc… (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of __February__, 2007.


___Kevin K. Keith___
**PLAINTIFF'S NAME**

X_/Kevin K. Keith_
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

_____

NOTARY PUBLIC

My Commission Expires:  01/17/2011

# DECLARATION:

1.   My name is *Michael Lawrence*.

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of *Union Springs* County of *Bullock*, State of *AL*, from approximately *June 20, 2005* until *Present*. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___11___ day of _Februray_____, 2007.


_Michael Lawrence_
**PLAINTIFF'S NAME**

_Michael Lawrence_
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 11th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

4

## DECLARATION:

1.   My name is _Ruby Stephens_.

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_, State of _AL_, from approximately _Sept. 19, 1994_ until _Present_.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.   I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.   I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


_Ruby Stephens_
**PLAINTIFF'S NAME**

_Ruby Stephens_
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires:  01/17/2011

## DECLARATION:

1.   'My name is _Darlene Sullen_.

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_, County of _Bullock_, State of _AL_, from approximately _06-03-80_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10th___ day of ___February___, 2007.


___Darlene Sullen___
**PLAINTIFF'S NAME**

X _Darlene G Sullen_
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

_____
NOTARY PUBLIC

My Commission Expires: <u>01/17/2011</u>

## DECLARATION:

1.   My name is ARtRicA Moore

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_, County of _Bulbck_____, State of _____, from approximately _04-26-00_ until _Present_____.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above).  To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it.  Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers.  To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _11_ day of _February_, 2007.


ARTRICA MOORE
PLAINTIFF'S NAME

X Artica Moore
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 11th day of February, 2007.

_____

NOTARY PUBLIC

My Commission Expires:  01/17/2011

4

## DECLARATION:

1.   My name is Katrina Murray.

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs, County of Bullock, State of AL, from approximately 02-20-97 until Present.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the __10__ day of __February__, 2007.


__Katrina Murray__
**PLAINTIFF'S NAME**


__Katrina L Murray__
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

_____
NOTARY PUBLIC

My Commission Expires: 01/17/2011

## DECLARATION:

1.    My name is _Thelma D Peebles_

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_, State of _AL_, from approximately _April 29, 1996_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above).  To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it.  Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers.  To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.

___Thelma D Peebles___
**PLAINTIFF'S NAME**

___Shelma Peebles___
**PLAINTIFF'S SIGNATURE**

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**EXHIBIT 2**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA,
### NORTHERN DIVISION

| | | |
|---|---|---|
| DARREN ANDERSON, et al., | § § § | |
| Plaintiffs, | § § | |
| | § | **CIVIL ACTION NO.** |
| v. | § § | **2:06-cv-00951-MEF-DRB** |
| WAYNE FARMS LLC., | § § § | |
| Defendant. | § § | |

## AFFIDAVITS/DECLARATIONS OF

### ADA M. TOWNSEND, MARTHA A. TUGGLES, EDNA COLEMAN, CAROLYN DOWDELL, DIANE FINNEY, MARGARET FOSTER, ROBERT GOODE, DUANE L. HARRIS, ANTWAIN HARRIS, CHARLENA HOOKS, KRESHAN JOHNSON.

# DECLARATION:

1.   My name is _ADA M Townsend_

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_, State of _AL_, from approximately _August 5, 1997_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___11___ day of ___February___, 2007.


___Ada M. Townsend___          ___Ada M. Townsend___
PLAINTIFF'S NAME                    PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.


NOTARY PUBLIC

My Commission Expires:  01/17/2011

## DECLARATION:

1.    My name is M artha  A. Tuggles

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately March 30, 1978 until Present.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___11___ day of ___February___, 2007.


_Martha A. Tuggles_
**PLAINTIFF'S NAME**

_Martha A. Tuggles_
**PLAINTIFF'S SIGNATURE**

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

## DECLARATION:

1.    My name is _Ed NA Coleman_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_, County of _Bullock_, State of _AL_, from approximately _04-25-97_ until _Present_.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.

___Edna Coleman___
PLAINTIFF'S NAME

___Edna Coleman___
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,

COUNTY OF BULLOCK.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

_____

NOTARY PUBLIC

My Commission Expires:  01/17/2011

## DECLARATION:

1.    My name is _Carolyn Dowdell_

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_, State of _AL_, from approximately _Aug. 19, 1985_ until _Present_.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


_Carolyn J. Dowdell_
PLAINTIFF'S NAME

_Carolyn J. Dowdell_
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires:  01/17/2011

# DECLARATION:

1.    My name is Dianne Finney.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs, County of Bullock, State of AL, from approximately August 1983 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.      As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.      As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.      During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.

___Dianne Finney___
PLAINTIFF'S NAME

___Dianne Finney___
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

 I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

 Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1.  My name is _Margaret Foster_.

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_, State of _AL_, from approximately _Sept. 9, 1976_ until _Present_.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.

___Margaret Foster___
**PLAINTIFF'S NAME**

___Margat Fost___
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires:  01/17/2011

## DECLARATION:

1.    My name is _Robert Goode_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_, State of _AL_, from approximately _11-2004_ until _03-2005_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on this the ___10___ day of ___February___, 2007.


___Robert Goode___
**PLAINTIFF'S NAME**

___Robert Goode___
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

_____
NOTARY PUBLIC

My Commission Expires:  01/17/2011

## DECLARATION:

1.    My name is _Duane L. Harris_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_, State of _AL_, from approximately _03-18-97_ until _Present_.    As    a    poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


___Duanel Harris___
**PLAINTIFF'S NAME**

___(Duane L. Harris___
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

_____
NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1.    My name is _Antwain Harris_

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_, County of _Bullock_, State of _AL_, from approximately _June 10, 1997_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _10_ day of _February_ , 2007.


_Antwain Harris_
**PLAINTIFF'S NAME**

_Antwain Harris_
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

## DECLARATION:

1. My name is *Charlene Hooks*.

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of *Union Springs*, County of *Bullock*, State of *AL*, from approximately *September 1990* until *Present*. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the __10__ day of __February__, 2007.

__Charlena Hooks__
**PLAINTIFF'S NAME**

__Charlena Hooks__
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1.   My name is Kreshan Johnson

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately Dec. 28, 1996 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


_Kreshan Johnson_
**PLAINTIFF'S NAME**

_Kreshan Johnson_
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**EXHIBIT 3**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA,
### NORTHERN DIVISION

|  |  |  |
|---|---|---|
| DARREN ANDERSON, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | **CIVIL ACTION NO.** |
| v. | § | **2:06-cv-00951-MEF-DRB** |
| | § | |
| WAYNE FARMS LLC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## AFFIDAVITS/DECLARATIONS OF

### SPENCER JOHNSON JR., EDDIE MAE HOUGH , ALONZO JACKSON, EVELINA JACKSON, DORETHA JOHNSON, BRENDA ANN JOHNSON, BRUCE JONES, DWIGHT JONES, LORETTA R. JONES, LUCY JONES, VANESSA BABERS.

## DECLARATION:

1.   My name is Spencer Johnson, Jr.

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock , State of AL , from approximately March 1983 until Present . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc… (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.     I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.     I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.

___Spencer Johnson, Jr.___          ___Spencer Johnson Jr___
**PLAINTIFF'S NAME**                        **PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires:  01/17/2011

## DECLARATION:

1.  My name is _Eddie Mae Hough_.

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _UNION Springs_ County of _Bullock_, State of _AL_, from approximately _04-21-69_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10th___ day of ___February___, 2007.


___Eddie Mae Hough___
**PLAINTIFF'S NAME**

___Eddie Mae Hough___
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

_____
NOTARY PUBLIC

My Commission Expires: <u>01/17/2011</u>

# DECLARATION:

1.    My name is _Alonzo Jackson_ .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_ , State of _AL_ , from approximately _October 1, 1991_ until _Present_ . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


___Alonzo Jackson___
PLAINTIFF'S NAME

___Alonzo Jackson___
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

## DECLARATION:

1.    My name is _Evelina Jackson_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_, County of _Bullock_, State of _AL_, from approximately _June 26, 1992_ until _Present_.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc… (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


Evelina Jackson
**PLAINTIFF'S NAME**

Evelina Jackson
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

## DECLARATION:

1. My name is DORETHA JOHNSON

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs, County of Bullock, State of AL, from approximately 01-04-88 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _10_ day of _February_ , 2007.

DORetha Johnson
**PLAINTIFF'S NAME**

_Doretha Johnson_
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

_____
NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1.    My name is _Brenda Ann Johnson_ .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_, County of _Bullock_ State of _AL_ , from approximately _07-22-85_ until _Present_ .  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the __10__ day of __February__, 2007.

__Brenda A. Johnson__
**PLAINTIFF'S NAME**

__Brenda A. Johnson__
**PLAINTIFF'S SIGNATURE**

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

_____

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1.   My name is _Bryce Jones_.

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_, County of _Bullock_, State of _AL_, from approximately _06-22-92_ until _Present_.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


___Bruce Jones___                    ___Bruce Jones___
PLAINTIFF'S NAME                     PLAINTIFF'S SIGNATURE


3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

## DECLARATION:

1.  My name is Dwight Jones .

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock , State of AL , from approximately 12-30-96 until Present .  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


**Dwight Jones**
PLAINTIFF'S NAME

**Dwight Jones**
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

_____
NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1.  My name is _Loretta R. Jones_

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_____, State of _AL__, from approximately _03-16-82___ until _Present_____. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


___Loretta R Jones___
PLAINTIFF'S NAME

___Loretta R Jones___
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1.   My name is _Lucy Jones_.

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_, State of _AL_, from approximately _May 9, 1972_ until _Present_.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


___Lucy Jones___
**PLAINTIFF'S NAME**

___Lucy Jones___
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1.   My name is _Vanessa Babers_

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_, State of _AL_, from approximately _August 14, 2003_ until _Present_.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _10_ day of _February_, 2007.

_Vanessa Babers_
PLAINTIFF'S NAME

_Vanessa Babers_
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.


NOTARY PUBLIC

My Commission Expires:  01/17/2011

**EXHIBIT 4**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

DARREN ANDERSON, et al.,   §
  §
    Plaintiffs,   §
  §
  §         CIVIL ACTION NO.
v.   §     2:06-cv-00951-MEF-DRB
  §
  §
WAYNE FARMS LLC.,   §
  §
    Defendant.   §
  §

AFFIDAVITS/DECLARATIONS OF

MARY N. BANDY,  RONALD DAVIE, MARY A. DULANEY,
MAMIE FITZPATRICK,  SHONA HAMPTON, QUINOSHA HOOKS,
HENRY HARRIS, KAREN LEE, ANNIE PEARL MACK, FRANKIE
MADDOX,  HELEN L. MASON, SHEILA MCCLAIN, GEORGE
PALM,  DANNY PARKER, LANETT PATTERSON.

# DECLARATION:

1.  My name is <u>Mary N. Bandy</u>.

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of <u>Union Springs</u> County of <u>Bullock</u>, State of <u>AL</u>, from approximately <u>June 5, 1978</u> until <u>Present</u>. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

        I declare under penalty of perjury that the foregoing is true and correct.

        Executed on this the ____10____ day of ____February____, 2007.


____Mary N. Bandy____
PLAINTIFF'S NAME

____Mary N. Bandy____
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

## DECLARATION:

1.    My name is _Ronald Davie_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_, State of _AL_, from approximately _October 14, 1994_ until _Present_.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the __10__ day of __February__, 2007.

__Ronald Davie__
**PLAINTIFF'S NAME**

__Ronald Davie__
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

  I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

  Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: <u>01/17/2011</u>

## DECLARATION:

1.   My name is _Mary A. Dulaney_.

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_, State of _AL_, from approximately _10-18-99_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


___Mary A. Dulaney___
PLAINTIFF'S NAME

___Mary A. Dulaney___
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

## DECLARATION:

1. My name is *Mamie Fitzpatrick*.

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of *Union Springs* County of *Bullock*, State of *AL*, from approximately *01-05-83* until *Present*. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10th___ day of ___February___, 2007.


Mamie Fitzpatrick
**PLAINTIFF'S NAME**

_Mamie Fitzpatrick_
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

## DECLARATION:

1.    My name is _Shona Hampton_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_, State of _AL_, from approximately _05-01-97_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.      As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.      As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.      During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on this the ___10___ day of ___February___, 2007.


___Shona Hampton___
**PLAINTIFF'S NAME**

___Shona Hampton___
**PLAINTIFF'S SIGNATURE**


3

STATE OF ALABAMA,

COUNTY OF BULLOCK.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires:  01/17/2011

# DECLARATION:

1. My name is _Quinosha Hooks_ .

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_ , State of _AL_ , from approximately _October 17, 2004_ until _Present_ . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc… (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___11___ day of ___February___, 2007.


Quinosha Hooks
**PLAINTIFF'S NAME**

*[signature]*
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 11th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

4

## DECLARATION:

1.    My name is *HENRY HARRIS*

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of *Union Springs* County of *Bullock*, State of *AL*, from approximately *06-17-96* until *Present*.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.     I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.     I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of __February__, 2007.


__Henry Harris__
**PLAINTIFF'S NAME**

__Henry Harris__
**PLAINTIFF'S SIGNATURE**

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

_____

NOTARY PUBLIC

My Commission Expires: 01/17/2011

## DECLARATION:

1.   My name is _KAREN Lee_ .

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_, County of _Bullock_ State of _AL_, from approximately _04-12-89_ until _Present_ . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.   I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.   I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.

___Karen Lee___
**PLAINTIFF'S NAME**

___Karen Lee___
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires:  01/17/2011

## DECLARATION:

1.    My name is Annie Pearl Mack.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately 09-19-96 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


___Annie P. Mack___
PLAINTIFF'S NAME

___X Annie Pearl Mack___
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# **DECLARATION:**

1.    My name is _Frankie    Maddox_

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs,_ County of _Bullock_____, State of _AL_, from approximately _05-22-83_ until _Present_____.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above).  To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.     I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it.  Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers.  To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.     I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.

___Frankie Maddox___
**PLAINTIFF'S NAME**

___Frankie M. Maddox___
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires:  01/17/2011

# **DECLARATION:**

1.    `My name is _Helen Lmason_____ .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_____, State of _AL__, from approximately _March 2, 1992_ until _Present_____.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___11___ day of ___February___, 2007.


Helen L Mason
**PLAINTIFF'S NAME**

Helen L Mason
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 11th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

4

## DECLARATION:

1.   My name is _Sheila M<sup>c</sup>Clain_.

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_, State of _AL_, from approximately _01-28-97_ until _Present_.   As    a    poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.   Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


___Sheila McClain___
**PLAINTIFF'S NAME**

___Shela Mc Clas___
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

_____
NOTARY PUBLIC

My Commission Expires:  <u>01/17/2011</u>

# DECLARATION:

1.    My name is _George Palm_ .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_ , State of _AL_ , from approximately _04-16-03_ until _Present_ . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.     I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.     I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


___George Palm___
**PLAINTIFF'S NAME**

___George Palm___
**PLAINTIFF'S SIGNATURE**

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

_____

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1. My name is Danny Parker.

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs, County of Bullock, State of AL, from approximately 07-01-03 until 04-04-04. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _____10_____ day of _____February_____, 2007.


__DANNY Parker__                    X _Denny Parker_
PLAINTIFF'S NAME                    PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

_____
NOTARY PUBLIC

My Commission Expires: 01/17/2011

## DECLARATION:

1.   `My name is _Lenett Patterson_.

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_, State of _AL_, from approximately _09-19-85_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above).  To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it.  Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers.  To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


Lenett Patterson
**PLAINTIFF'S NAME**

Lenett Patterson
**PLAINTIFF'S SIGNATURE**

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

_____
NOTARY PUBLIC

My Commission Expires: 01/17/2011

**EXHIBIT 5**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA,
### NORTHERN DIVISION

| | | |
|---|---|---|
| **DARREN ANDERSON, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **2:06-cv-00951-MEF-DRB** |
| | § | |
| **WAYNE FARMS LLC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## AFFIDAVITS/DECLARATIONS OF

### RACHEL PENN, RUBY HALL PERSON, OLLIE M. PUGH, TRACY ROBBINS, CHRISTINE RODGERS, WENDY TARVER, LILLIE B. TARVER, MARCHE STEWART, MARY L. THRASHER, JERALDINE R. WEAVER, IMAGENE WILLIAMS, RUBYE J. WRIGHT.

## DECLARATION:

1.    My name is _Rachel Penn_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_, County of _Bullock_, State of _AL_, from approximately _10-29-85_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.     I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.     I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ____10____ day of ____February____, 2007.


____Rachel Penn____                    ____Rachel Penn____
**PLAINTIFF'S NAME**                         **PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

    I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

    Given under my hand and official seal this the 10th day of February, 2007.

                                                                  
NOTARY PUBLIC

                                              My Commission Expires: 01/17/2011

## DECLARATION:

1.    My name is _Ruby Hall Person_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_, State of _AL_, from approximately _Aug. 5, 1997_ until _Aug. 29, 2006_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___ , 2007.


___Ruby M. PERSON___
**PLAINTIFF'S NAME**

___Ruby M. Person___
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires:  01/17/2011

## DECLARATION:

1.   My name is _Ollie M. Pugh_

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_ , State of _AL_ , from approximately _Sept. 9, 1980_ until _Present_ .  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc… for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.     I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.     I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


___Ollie M. Pugh___
PLAINTIFF'S NAME

___Ollie M. Pugh___
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

    I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

    Given under my hand and official seal this the 10th day of February, 2007.

                                    NOTARY PUBLIC

                                      My Commission Expires:  01/17/2011

# DECLARATION:

1.    My name is ___Tracy Robbins___.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of ___Union Springs___ County of ___Bullock___, State of ___AL___, from approximately ___Feb. 2, 1987___ until ___Present___.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.     Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


___Tracy Robbins___
**PLAINTIFF'S NAME**

___Tracy Robbins___
**PLAINTIFF'S SIGNATURE**

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

## DECLARATION:

1.    My name is _Christine Rodgers_ .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_, County of _Bullock_ , State of _AL_ , from approximately _01-13-92_ until _Present_ . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


___Christine Rodgers___
**PLAINTIFF'S NAME**


___(signature)___
**PLAINTIFF'S SIGNATURE**


3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

_____

NOTARY PUBLIC

My Commission Expires: 01/17/2011

## DECLARATION:

1.   My name is **Wendy Tarver**.

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of **Union Springs** County of **Bullock**, State of **AL**, from approximately **10-30-92** until **12-2003**.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


___Wendy Tarver___
**PLAINTIFF'S NAME**

___Wendy Tarver___
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

_____

NOTARY PUBLIC

My Commission Expires:  01/17/2011

## DECLARATION:

1.    My name is *Lillie B. Tarver* .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of *Union Springs* County of *Bullock* , State of *AL* , from approximately *Jan. 4, 1979* until *Present* .  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


_Lillie B. Tarver_
**PLAINTIFF'S NAME**

_Lillie B. Tarver_
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires:  01/17/2011

# DECLARATION:

1.    My name is _Marthe Stewart_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_, State of _AL_, from approximately _April 21, 1998_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


_Marche Stewart_
**PLAINTIFF'S NAME**                    _Marche Stewart_
                                        **PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1.    My name is *Mary L. Thrasher*

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs, County of Bullock, State of AL, from approximately 09-22-88 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


___Mary L. Thrasher___
**PLAINTIFF'S NAME**

___X/ Mary L. Thrasher___
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

_____

NOTARY PUBLIC

My Commission Expires:  01/17/2011

## DECLARATION:

1.  My name is *Jeraldine R. Weaver*

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of *Union Springs*, County of *Bullock*, State of *AL*, from approximately *03-08-03* until *12-2003*. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


___Jeraldine R Weaver___
PLAINTIFF'S NAME

___Jeraldine R Weaver___
/PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

_____

NOTARY PUBLIC

My Commission Expires:  01/17/2011

## DECLARATION:

1.   My name is _IMAGENES.Williams._

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_, State of _AL_, from approximately _Dec. 8, 2003_ until _April 1, 2004_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___11___ day of ___February___, 2007.


___Imogene S. Williams___
**PLAINTIFF'S NAME**

___Imogene S. Williams___
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 11th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

4

# DECLARATION:

1.  My name is _Bubbie XX Wright_.

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Union Springs_ County of _Bullock_, State of _AL_, from approximately _06-01-05_ until _09-2005_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


___Rubye J. Wright___
**PLAINTIFF'S NAME**

X___Rubye Wright___
**PLAINTIFF'S SIGNATURE**


3

STATE OF ALABAMA,

COUNTY OF BULLOCK.


    I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

    Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires:  01/17/2011

**EXHIBIT 6**

Case 2:06-cv-01023-WKW-WC    Document 39-9    Filed 03/06/2007    Page 2 of 9



WAYNE FARMS LLC

| Company Information | Product Information | Food Safety | Product Development | Communications |

Business Focus

Contact Us

# Wayne Farms LLC History

Career Opportunities

Home >> Company Information >> **Wayne Farms LLC History**

Wayne Farms LLC is part of the family of ContiGroup Companies, Inc. Wayne Farms LLC represents one of the most vertically integrated poultry companies in the United States and ContiGroup's largest business sector, processing almost 1.5 billion pounds of chicken annually.

## ContiGroup Companies

ContiGroup Companies, Inc. (ContiGroup), is one of the world's largest privately owned companies. Through six generations and nearly two centuries of agribusiness experience and commitment to the industry, ContiGroup is an innovator and leading force in processing and marketing of agri-products and food on a global scale.

ContiGroup, formerly known as Continental Grain Company, was founded in 1813 in Belgium and has evolved from a European trading business into an international, multifaceted agricultural business. Since 1944, ContiGroup has operated in the United States, and is headquartered in New York City.

ContiGroup is comprised of a variety of different businesses: Wayne Farms LLC, Five Rivers Ranch Cattle Feeding LLC, Premium Standard Farms, ContiLatin, ContiAsia, and ContiInvestments

Each year ContiGroup and their subsidiaries produce, process and market more than two billion pounds of poultry, beef, and pork as well as producing animal feeds and edible flour. These businesses focus on marketing both in the United States and internationally.



### Wayne Farms LLC

Wayne Farms LLC, formerly known as the Poultry Division of ContiGroup Companies, is the sixth largest producer and processor of broiler chickens in the United States. Utilizing the many resources of ContiGroup, Wayne Farms LLC's vertical integration allows control of the process from feed to final (raw or cooked) product, assuring strict product quality and food safety throughout the process.

Producing products under the brand names of **Wayne Farms ®, Dutch Quality House®** and **Platinum Harvest®,** Wayne Farms LLC has a well-known history of providing exceptional poultry products to some of the largest industrial, institutional and foodservice companies across America.

Wayne Farms® has been doing business since 1965 with the spin-off of the poultry division from Allied Mills, a former subsidiary of Continental Grain Company. With that spin-off, Wayne Farms was established with locations in Albertville and Union Springs, Alabama. Interestingly enough, the Albertville facility, which was operated under a variety of different poultry company owners, is the



oldest poultry facility in the state of Alabama. Over the course of the past thirty years, we have acquired fresh processing facilities in Danville, Arkansas, Laurel, Mississippi, Decatur, Alabama, Dobson, North Carolina, Pendergrass, Georgia, Enterprise Alabama and our most recent acquisition in College Park, Georgia. Our processing facilities are built to exacting food safety standards and we are constantly looking at ways to improve our processes and equipment to deliver high-quality and exact-to-specification product.



DUTCH QUALITY HOUSE® , the mark of quality for further processed poultry, has been a trusted name brand since the first plant opened in 1978. DUTCH QUALITY HOUSE®  has been a part of the ContiGroup operation since 1985 with the acquisition of our first plant in Oakwood (north Atlanta metro), Georgia. Since the opening of our first plant, we have acquired two facilities in Bossier City, Louisiana and Douglas, Georgia and built two state-of-the art facilities in Decatur, Alabama.  The Bossier City facility was sold in October of 2005.

The DUTCH QUALITY HOUSE® brand is comprised of value-added products that are used in our nation's largest restaurant chains, by some of the country's largest institutional food manufacturers, and in individually owned restaurants throughout the nation.

Our heritage in providing our business partners with products that they need is strong---and is just another way we strive to be the best for the best.

In conjunction with our fresh poultry processing facilities, we have hatcheries, feed mills and extensive grow-out farms throughout the Southeast to support our vertically integrated operations. Many of the fresh products that are processed at our fresh processing facilities are used to support the  production needs for our DUTCH QUALITY HOUSE® branded products.

**Home | Company Information | Product Information | Food Safety | Product Development | Communications**

Copyright © 2007 Wayne Farms LLC. All rights reserved.
**Privacy Policy**

**EXHIBIT 7**

Case 2:07-cv-00167-MEF-WC    Document 34-10    Filed 02/08/2008    Page 2 of 12




Company Information        Product Information        Food Safety        Product Development        Communications

# Business Focus

Home >> Company Information >> Business Focus

***How do we best support the efforts of our partners?*** This is the question that defines our approach to the business. As a leading Business to Business (B2B)marketer in the poultry industry, our efforts are intensely focused around our customers. We spend no time creating a brand, but instead dedicate our resources, our time, and our energy to finding new ways to add value to the bottomline for our customers. Our approach is to simply identify the factors key to a customer's success, focus our manufacturing expertise in these areas and deliver an innovative approach to provide our partners with a competitive advantage. We focus our efforts so as not to compete with our customers, but instead we choose to offer them the highest quality, best value products available to support their Sales and Marketing programs. The very structure for our success is defined in four distinct areas.

- **Food Safety Leadership** - With food safety being top of mind for everyone today, at Wayne Farms LLC, providing the leadership in food safety initiatives is our most important job.

- **Proactive Product Development** - Today's business world demands a proactive approach to finding not only new products, but defining the concepts to make them successful.

- **Continuous Process Improvements** - As we look to provide a competitive edge for our customers, we must constantly upgrade and implement new technology to remove cost from the supply chain.

- **Long Term Business Partnerships** - At the very heart of our company is the desire to build long term partnerships with our customers. Only with this dedicated desire can we truly understand how to take a supplier-customer relationship to the ultimate level of business partnership.

Bottomline, at Wayne Farms LLC, we are driven by the challenge to find new approaches to our business and rewarded with the opportunity to *"Break Parity Through Innovation"*


**Brands** MPG Video 1.83 MB

**Home | Company Information | Product Information | Food Safety | Product Development | Communications**

Copyright © 2007 Wayne Farms LLC. All rights reserved.
**Privacy Policy**

Case 2:06-cv-00951-MEF-WC     Document 39-10     Filed 08/05/2007     Page 2 of 9



WAYNE FARMS LLC

| Company Information | Product Information | Food Safety | Product Development | Communications |




# PROCESSING PLANT OPERATIONS

**Home >> Food Safety >> Food Safety Information >> PROCESSING PLANT OPERATIONS**

Processing plants currently have implemented the following programs to ensure safe products:
- Full implementation of HACCP
- Feed withdrawal programs and the verification of programs to ensure ideal bird condition
- The use of counterflow scalders. Counterflow scalders are designed so that the chickens are cleaner upon exiting the scalder
- Chlorinated bird washers located pre-evisceration. Provides an antimicrobial action early in the process to reduce cross contamination opportunities
- Routine process control monitoring and adjustment of evisceration equipment as a mechanical preventive measure against fecal contamination
- Chlorinated evisceration equipment sprays to sanitize between each bird and eliminate microbial and physical cross contamination
- Chlorinated evisceration equipment sprays to sanitize between each bird and eliminate microbial and physical cross contamination
- Treatment of chicken carcasses with an additional antimicrobial (TriSodium Phosphate - TSP) post evisceration.
- Chlorinated whole bird chillers designed to chill the chickens to less than 40 F. The chillers have a continuous antimicrobial treatment responsible for a 1 log reduction in E.coli to levels that are significantly below USDA mandated maximum levels. The chillers also have water overflow standards to ensure a continuous exchange of water during the processing day. Product temperature control exiting the chiller media to less than 40 F. Chicken products are boned and packaged in a refrigerated environment to ensure the maintenance of chilled temperatures.
- Product temperature control through delivery to the customer. Additional plant programs for ensuring food safety are as follows:
- Sanitation Standard Operating Procedures (SSOP's) to ensure plant cleanliness prior to the start of operations and throughout the processing day.
- Good Manufacturing Practices (GMP's) include training and monitoring with regard to employee hygiene, product handling practices, and facility maintenance.
- Foreign Material Controls include product inspection programs, tool inventory control programs, and metal detection where applicable.
- Food Ingredient and Finished Product traceability
- Auditing programs to ensure food safety practice standards are met at copackers, warehouses, and cold storage facilities.

**Home | Company Information | Product Information | Food Safety | Product Development | Communications**

Copyright © 2007 Wayne Farms LLC. All rights reserved.
**Privacy Policy**