**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA,**
**MONTGOMERY DIVISION**

| | | |
|---|---|---|
| **DARREN ANDERSON, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **2:06-cv-00951-MEF-DRB** |
| | § | |
| **WAYNE FARMS, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT"S REPLY TO PLAINTIFFS' RESPONSE (Doc. 36)**

Comes now Plaintiffs and respectfully request that this Court give no weight to the Defendant's Reply and enter an order denying Defendant's Motion to Stay. As grounds for said request, Plaintiffs aver that,

1. The facts are simple, a) Plaintiffs filed this action first and under the first filed rule this action is not likely to be consolidated into the Mississippi *Agee* action, b) Plaintiffs in this action are in the best position to represent the rights of individuals at this specific location, c) Plaintiffs have made reasonable attempts to join *Agee* Plaintiffs in this action through communications with their counsel, d) Plaintiffs have made attempts in good faith to avoid dual representation, e) There is no guarantee, absent the application for and the granting of MDL status, that the issues Defendant

complains of will ever be resolved because there is no statutory provision that precludes the *Agee* action and this action from proceeding as two separate collective actions, and f) Defendant's attempts to stall this litigation are causing putative class members to be harmed.

2. Plaintiffs respectfully request the Court view Defendant's "Reply To Plaintiffs' Response to Defendant's Motion to Stay," filed March 2, 2007, for what it is, a smoke and mirror show, built on a web of half truths purposefully orchestrated for the sole purpose of discrediting Plaintiffs' counsel in this action.

3. Defendant accuses Plaintiffs' counsel in Mississippi and Alabama of engaging in overlapping and successful solicitation of the same Wayne Farms employees. Plaintiffs would like to remind the Court that the action at hand was filed nearly two months prior to the *Agee* action. It would appear *Agee* counsel is engaging in overlapping solicitation of Alabama Wayne Farms employees.

4. Defendant in footnote 3 on page 1 of their Reply notes the names of 72 plaintiffs that have allegedly dual representation in this action. Of these 72 individuals, according to court documents in this action, 60 are actually plaintiffs in this action, named or opted-in.

5. Counsel, before signing up an individual asked the individual if they were already represented to which they obviously replied "No". Plaintiffs have made attempts in good faith to resolve this issue to no avail. *See* Exhibits 2-3. Plaintiffs' counsel in this action believes in an individual's constitutional right to counsel of choice. Given the two differing legal strategies in *Agee* and *Anderson,* Plaintiffs' counsel cannot simply transfer the clients with dual representation to the *Agee* action knowing the *Agee* action is likely to be unsuccessful.

6. As further evidence *Anderson* plaintiffs with so called "dual representation" intend for The Cochran Firm to represent their interests, Plaintiffs attach 35 affidavits out of the 60 dual represented individuals, provided at The Cochran Firm's request, signed in the presence of a Cochran Firm notary as recently as February 11, 2007. *See* Exhibit 4.

7. In a letter authored by Bill Hommel, *Agee* Plaintiffs' counsel, Mr. Hommel acquiesces that all but forty three Alabama Wayne Farms employees at four different Wayne Farms plants were represented by The Cochran Firm before his firm's involvement. *See* Exhibit 1. Mr. Hommel asserts only 39 Union Springs employees signed with his firm prior to signing with The Cochran Firm. *Id.* Furthermore, in an attempt to resolve any overlap or duplicative representation, Plaintiffs in this action contacted

the Alabama State Bar's Ethics Section to receive an opinion on how to proceed.

8. The Alabama State Bar recommended a joint letter from Plaintiffs' counsel in *Agee* and *Anderson* notifying individuals of their dual representation and allowing them an opportunity to terminate the services of the firm which they do not wish to represent them. Plaintiffs have asked *Agee* counsel to transfer their clients to this action and for those with dual representation proposed a joint letter on three different occasions. *Agee's* counsel has refused to respond to all requests. *See* Exhibits 2-3. As an alternative, the Bar recommended sending a letter from The Cochran Firm to those with dual representation if *Agee* counsel refused to cooperate notifying them of their dual representation asking them to confirm their counsel of choice. Plaintiffs have yet to send out such a letter in order to give Mr. Hommel every opportunity to cooperate and do what is fair. *See* Exhibit 3

9. Defendant attempts in a slide of hand trick to use exhibits related to alleged misconduct involving, Mike Espy and Richard Celler, to show overreaching or imply that misconduct occurred in soliciting Mississippi clients and that the alleged misconduct is somehow relevant to issues before this Court involving The Cochran Firm. While Richard Celler is associated with the case at hand, pro hac vice, the exhibits attached to Defendant's

Reply have no relevance in these proceedings and were not utilized by The Cochran Firm. Richard Celler has never met with an Alabama client, has had little to no involvement in the case at hand other than attending the Rule 26 meeting of the parties, has met attorneys at The Cochran Firm's Birmingham office on only one occasion and in no way is he, Morgan and Morgan or Mike Espy a part of The Cochran Firm. Furthermore, in conferring with Mr. Celler he has denied the truthfulness of the deposition and stated he was in Killington, VT during one of the Mississippi meetings in which Ms. Shirley Lindsey accuses him personally of misconduct. Mr. Celler wasn't even in the state as Ms. Lindsey alleges which raises the question, why was Ms. Lindsey motivated to give such testimony and by whom? It certainly wasn't Plaintiffs' counsel in this action!

10. In another attempt to distract the Court from the merits of this case Defendant argues in a self serving statement that they did not act willfully or act in bad faith when not paying employees appropriately. They ask this Court to take a limited look at employment at the Union Springs plant during the last twenty-four (24) month period. What they cleverly fail to bring to this Court's attention is that in the last 36 month period (2004, 2005, 2006), the Union Springs plant terminated 1,251 plant employees which equates to an extraordinary average annual turnover rate of **64%**. *See* Def.'s Reply

Exhibit B. From this turnover number we can deduce one or combinations of several factors are at work here. One, pay practices may not be sufficient to ensure a stable work force. Two, working conditions may be hazardous or undesirable making it impossible to maintain a stable workforce. Thirdly, management may not treat their people appropriately thereby making it difficult to maintain a stable workforce. Regardless of the reasons for the high turnover, Defendants argument that only 72 individuals could be adversely affected by this stay is specious.

11. Defendants try to assert that there is no need to rush court supervised notice because only 72 individuals could be adversely affected by this stay. To the contrary, based on this plant's high turnover rate and the distinct possibility that Defendant did act willfully, since the Department of Labor has always maintained the activities at hand are compensable, therefore the three (3) year statute of limitations should apply, if it is found that the Defendant did act in bad faith, 415 plus individuals could be negatively affected by this stay.

12. Plaintiffs filed this collective action litigation against the Wayne Farms Union Springs plant individually versus filing a national or regional collective action to follow the spirit of the FLSA 216(b) collective action provision and to ensure employees are similarly situated so they do not fall

victim to decertification rulings as did other FLSA poultry cases filed pre *Alvarez* such as *Fox v. Tyson*, Case #4:99-CV-1612-VEH (N.D. Alabama), a national collective action and *Anderson v. Cagles, Inc.*, 2005 WL 3873160 (M.D. Georgia), a regional collective action. In these cases Plaintiffs' collective actions were not certified because the courts found that on a national or regional basis there were to many distinctions on a plant by plant basis due to differences in management personnel, bargaining unit employees vs. non-bargaining unit employees, different collective bargaining agreements, different payroll system software and hardware, and generally differences in location policies and procedures. In both cases Plaintiffs were dismissed without prejudice and allowed to file against the individual plants where they were employed. In conversations with the *Agee* action's counsel, it became apparent that they intend to gut the potential claims under Supreme Court's decision in *IBP v. Alvarez,* 126 S.Ct. 514 (2005), to try to ensure similarity on a national basis. For example, according to counsel, *Agee* does not intend to go after unpaid breaks or significant periods of walk time because those two issues can vary significantly plant to plant and will ultimately affect their similarly situated argument nationally. They intend to reduce clients' claims for compensable activities to 10 - 15 minutes a day, that otherwise in this action could be as

much as 105 minutes a day. The *Agee* plaintiffs' counsel will have a wind fall in fees if their national collective action is successful but it will be at their clients' detriment. In bringing this action against the Union Springs plant and separate actions against each of Wayne Farms' other Alabama plants, Plaintiffs' counsel has subjected themselves to significantly higher costs of litigation than those incurred in a single national collective action such as *Agee*. This is not by accident and not a negative for Plaintiffs' counsel; it is the cost of ensuring what is best for the client is accomplished.

13. Defendant is correct that Plaintiffs do not oppose their Motion to Apply the First Filed Rule. This litigation was filed on October 20, 2006. The *Agee* action was filed on December 13, 2006. Plaintiffs are in a better position to represent the interests of the collective class and request the Court consolidate Union Springs Alabama Wayne Farms employees participating in the *Agee* action into this action subject to the class definition as set forth in this action's complaint.

14. Lastly, Plaintiffs in this action have grave concerns regarding defense counsel's motives. In what appears to be a completely inappropriate move, Mr. Crutcher spent an entire deposition questioning one, and suspiciously only one *Agee* plaintiff, not on issues related to the merits of the *Agee* case but instead eliciting responses insinuating unethical practices while

interjecting comments of his own dripping with sarcasm. *See* Def.'s Reply Exhibit A. After years of fighting national FLSA actions arguing cases should be brought on a plant by plant basis is it possible that in this post *IBP v. Alvarez* environment, where plaintiffs have brought actions on a plant by plant basis, that Defendant is now interested in a blue light special offering to settle claims on a national basis for pennies on the dollar?

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that this Court deny Defendant's motion to stay, consolidate *Agee* plaintiffs from the Union Springs Alabama plant into this action and order the litigation proceed.

Dated: March 5, 2007

Respectfully submitted,

**THE COCHRAN FIRM, P.C.**

/s/ Robert J. Camp
**ROBERT J. CAMP**
BERNARD D. NOMBERG
LANCE SWANNER
SAMUEL A. CHERRY, JR.
505 North 20th Street, Suite 825
Birmingham, AL 35203
(205) 930-6900 (Phone)
(205) 930-6910 (Fax)

***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2007, I electronically filed the foregoing Motion with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to:

Dorman Walker
dwalker@balch.com

Lisa J. Sharp
lsharp@balch.com

Wendy A. Madden
wmadden@balch.com

Pepper Crutcher, Jr.
pcrutcher@balch.com

/s/ Robert J. Camp
**ROBERT J. CAMP**

# EXHIBIT 1

BOARD CERTIFIED

LABOR AND EMPLOYMENT LAW
CIVIL TRIAL LAW
PERSONAL INJURY TRIAL LAW

TEXAS BOARD OF
LEGAL SPECIALIZATION

# WILLIAM S. HOMMEL, JR.

A PROFESSIONAL CORPORATION

ATTORNEY AT LAW

www.hommelfirm.com

1402 RICE ROAD
SUITE 200
TYLER, TEXAS 75701
(903) 596-7100
(903) 596-7464 FAX

WRITER'S EMAIL:
BHOMMEL@HOMMELFIRM.COM

February 9, 2007

Sent Via Facsimile
and Certified Mail/Return Receipt Requested

Mike Espy
EOP Building
819 7th Street NW, Suite 205
Washington, DC 20001
Fax: 202.408.5445

Joseph D. Lane
Lance H. Swanner
Samuel A. Cherry, Jr.
Cochran, Cherry, Givens, Smith, Lane & Taylor, P.C.
163 West Main Street
P.O. Box 927
Dothan, Alabama 36302
Fax: (334) 793-8280

Mike Espy
Lamar Life Building
317 E. Capitol Street, Suite 101
Jackson, MS 39201
Fax: 601.355.6021

Robert J. Camp
The Cochran Firm, P.C.
505 North 20th Street, Ste. 825
Birmingham, AL 35203
Fax: (205) 244-1171

Richard Celler
284 South University Drive
Fort Lauderdale, Florida 33324
Fax: (954) 333-3515

Re: Civil Action No. 2:06cv268; *April Agee, et al v. Wayne Farms, L.L.C.*, et al; in the United States District Court for the Southern District of Mississippi, Hattiesburg Division

Gentlemen:

In reviewing the filings in the *Agee* case, I have determined that the following clients signed a fee agreement with our group prior to them signing a consent/fee agreement with your group:

| | |
|---|---|
| Pamela M. Allen | Decatur |
| Ramona Ramos | Decatur |
| Diane Garner Ricks | Decatur |
| Birda Mae Robinson | Decatur |
| | |
| Alberta K. Anderson | Union Springs |
| Darren Anderson | Union Springs |
| Terrance Anthony | Union Springs |
| Annie Bussey | Union Springs |
| Tomecha O. Canty | Union Springs |
| Jacqueline Cooper | Union Springs |
| Marquetta Cunningham | Union Springs |
| Delores Davis | Union Springs |
| Kirby Davis | Union Springs |
| Helen Ellis | Union Springs |
| Teresa Graves | Union Springs |
| Nicklous Hill | Union Springs |
| Susie Jackson | Union Springs |
| Jessica Jenkins | Union Springs |
| Recike Johnson | Union Springs |
| Rosario Johnson | Union Springs |
| Trellis Jordan | Union Springs |
| Reginia Long | Union Springs |
| Santana McClendon | Union Springs |
| Harvey Cornelius Parker | Union Springs |
| Peggy L. Pitts | Union Springs |
| Betty Randolph | Union Springs |
| Mary Dean Rayburn | Union Springs |
| Aggie Scott | Union Springs |
| John Scott | Union Springs |
| Mayola Shelley | Union Springs |
| Charlotte Smith | Union Springs |
| Dessie Smith | Union Springs |
| Janekia Smith | Union Springs |
| Kimberlyn Denise Sparks | Union Springs |
| Carlos Stanley | Union Springs |
| Lanethia Still | Union Springs |
| Sherry Tarver | Union Springs |
| Mary E. Thomas | Union Springs |
| Eula Townsend | Union Springs |
| Terrance Warmack | Union Springs |
| Mary J. Washington | Union Springs |
| Callie M. Williams | Union Springs |

| | |
|---|---|
| Alan L. Williamson | Union Springs |

Demand is immediately made that you, your law firms and any of the other members of your legal team decline representation of each and every person listed above and agree to transfer their case to the *Agee* case immediately based upon our group's prior agreement with these people. You should also provide the undersigned with a copy of the letter of declination and the motion to transfer these individuals to the *Agee* case as soon as possible. If your group ignores this demand, our group will be forced to file a motions in the *Bolden* and *Anderson* cases to transfer these individuals to the *Agee* case based upon our prior representation agreements. We will also seek the appropriate relief from the state bar associations in Mississippi, Alabama and Florida.

The following clients have also signed fee agreements with our group; however, we have determined that they had previously signed an agreement with your group. We will be immediately withdrawing from representation from these individuals and will provide you a copy of the letter declining representation and we will be taking no further action on their behalf. We will also file the appropriate motion to withdraw representation of these individuals, considering the fact that a separate case has been filed to protect their rights.

| | |
|---|---|
| Pratuangtip Bady | Decatur |
| Woosie Williams | Decatur |
| Tiffany M. Pugh King | Union Springs |
| Laurie A. Willis | Union Springs |
| Christine Youngblood | Union Springs |

Your prompt attention to this matter is appreciated.

Very truly yours,

William S. Hommel, Jr.

WSH/sm

cc: Robert L. Salim
A. Craig Eiland
Roger Doolittle
Seth Hunter
Michael Josephson

# EXHIBIT 2

THE COCHRAN FIRM
BIRMINGHAM
505 North 20th Street • Suite 825 • Birmingham, Alabama 35203
Telephone: (205) 244-1115 • Fax: (205) 244-1171
WWW.COCHRANFIRM.COM

February 13, 2007

**VIA EMAIL AND OVERNIGHT DELIVERY**
William S. Hommel, Jr., Esq.
1402 Rice Road
Tyler, Texas 75701

RE: Alleged Dual Representation

Dear Bill,

Thank you for your letter dated February 9, 2007. We are happy you have conceded that you do not represent our clients that retained our services prior to you contacting them. Our position regarding the referenced forty-two individuals you claim to represent is unchanged. Our clients were questioned by our staff upon initial interview to ensure they did not have prior representation. If they answered in the affirmative that they had already signed up with another firm they were not taken on as a client. Therefore, every one of our clients in our eyes was unrepresented. To the extent your clients did or did not send you a letter terminating your services, I am sorry they have caused you an inconvenience.

As suggested on two other occasions, we feel a joint letter to all clients in dispute is the most ethical way to ensure parties are represented by their counsel of choice. We have conferred with the Alabama State Bar's Ethics Section and they agree with our position. This is especially true in light of our differing legal strategies. As we have commented before, your certification is not appropriate on a national basis, as demonstrated in Fox v. Tyson and Anderson v. Cagles, and it does not follow the original intent of the Fair Labor Standards Act. On a national or regional basis, individuals are not similarly situated due to differences in management, collective bargaining agreements, payroll practices, facilities, etc. To reject current Cochran clients in order to send them to you knowing your efforts are likely to be unsuccessful would violate our duty to our clients.

Furthermore, if you continue down this path, insisting on pursuing a national class which includes our clients, we will be forced to enter a Motion to Intervene to explain in detail to the Court why your action should not move forward on a national basis.

Please contact me to discuss the drafting of a joint letter to notify the forty two clients with alleged dual representation. We do not want to work against you but instead

prefer cooperation. When we last talked you were going to submit a proposal related to transferring Alabama clients to the four actions pending in Alabama. I assume you are no longer interested in making such a proposal? Again, for those clients that select your firm as a result of our joint letter we will transfer them to your suit but we will still be forced to intervene to protect our clients.

Sincerely

Robert J. Camp

**Robert Camp**

**From:** Robert Camp
**Sent:** Tuesday, February 13, 2007 3:00 PM
**To:** 'bhommel@hommelfirm.com'
**Subject:** 2/9/2007 Response



DOC021307.pdf
(49 KB)

Bill,

For your convenience please see the attached. You will receive a hard copy via overnight delivery.

Robert

From: Origin ID: CZCA (205)244-1115
Byron Perkins
Cochran Firm-Birmingham
505 North 20th Street
Suite 825
Birmingham, AL 35203

FedEx Express

E

Ship Date: 13FEB07
ActWgt: 1 LB
System#: 9403865/INET2600
Account#: S *********

Delivery Address Bar Code



SHIP TO: (903)596-7100 BILL SENDER

**William Hommel**
**William S. Hommel**
**1402 Rice Road, ste. 200**

**Tyler, TX 75701**

Ref #
Invoice #
PO #
Dept #

**STANDARD OVERNIGHT**

**WED**
Deliver By:
14FEB07

TRK# **7981 0702 4025** FORM 0201

**SHV** AA

**75701** -TX-US

**XH TYRA**



Shipping Label: Your shipment is complete

1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# EXHIBIT 3

THE COCHRAN FIRM

BIRMINGHAM

505 NORTH 20TH STREET • SUITE 825 • BIRMINGHAM, ALABAMA 35203
TELEPHONE: (205) 244-1115 • FAX: (205) 244-1171
WWW.COCHRANFIRM.COM

March 2, 2007

**VIA EMAIL AND OVERNIGHT DELIVERY**
William S. Hommel, Jr., Esq.
1402 Rice Road
Tyler, Texas 75701

RE: Alleged Dual Representation

Dear Bill,

As you know we responded to your February 9, 2007 letter on February 13, 2007. In that letter we requested that you contact us so we could work in both our clients' best interests and ensure individuals have their counsel of choice. We proposed a joint letter as prescribed by the Alabama State Bar's Ethics Section. To date we have not heard from you.

Please contact us to discuss the joint letter or confirm that your inaction means you are not interested in a joint letter and that you feel it best that this confusion continue.

Sincerely yours,

Robert J. Camp

**Robert Camp**

**From:** Robert Camp
**Sent:** Friday, March 02, 2007 8:33 AM
**To:** 'bhommel@hommelfirm.com'
**Subject:** Update



DOC030207.pdf
(20 KB)

Please see the attached letter. Hard copy to follow.

Robert

From: Origin ID: CZCA (205)244-1115
Robert Camp
The Cochran Firm Birmingham
505 North 20th Street
Suite 825
Birmingham, AL 35203

FedEx Express

E

CLS#12107/2123

Ship Date: 03MAR07
ActWgt: 1 LB
System#: 9403865/INET2600
Account#: S *********

Delivery Address Bar Code



SHIP TO: (903)596-7100 BILL SENDER
**William Hommel, Jr.**

**1402 Rice Road**

**Tyler, TX 75701**

Ref #
Invoice #
PO #
Dept #

**STANDARD OVERNIGHT** **MON**

Deliver By:
05MAR07

TRK# 7990 9681 7969 FORM 0201

SHV AA

75701 -TX-US
RES

**XH TYRA**



Shipping Label: Your shipment is complete

1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA,**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **DARREN ANDERSON, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **2:06-cv-00951-MEF-DRB** |
| | § | |
| **WAYNE FARMS LLC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**AFFIDAVITS/DECLARATIONS OF**

**CHERYL Y. ANTHONY, SHARON BIGGERS, HELEN ELLIS, JESSICA JENKINS, TRELLIS JORDAN, FELECIA MIMS, REGENIA LONG, CHRISTINE YOUNGBLOOD, LAURA A. WILLIS, ALAN L. WILLIAMSON, KENNETRA S. WHEELER, TERRANCE WARMACK, TONY TOLLIVER, PEGGY PITTS, BETTY J. RANDOLPH, LANETHIA STILL, SHERRY TARVER, TERESA COMER, BENJAMIN F. CURRY, JR., SANTANA MCCLENDON, AGGIE L. SCOTT, MARY J. WASHINGTON, CALLIE WILLIAMS, KIMBERLY D. SPARKS, JANEKIA SMITH, DIANNE PATTERSON, MARCUS OREE, SALLIE A. JERNIGAN, MARY E. IVEY, PEGGY HOWARD, ARLENE BRONSON, JOHN W. SCOTT, HELEN TARVER, TIFFANY KING, TOMMY HAMPTON.**

# DECLARATION:

1. My name is Cheryl Y. Anthony

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately 01-25-01 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 11 day of February, 2007.

Cheryl V. Anthony
PLAINTIFF'S NAME

Cheryl Anthony
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 11th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1. My name is Helen Ellis.
2. I am a Plaintiff in this action.
3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.
4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately 08-20-91 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.
5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.
6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Helen Ellis
PLAINTIFF'S NAME

[signature]
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**DECLARATION:**

1. My name is Jessica Jenkins.

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs, County of Bullock, State of AL, from approximately 05-24-04 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10th day of February, 2007.

Jessica Jenkins
PLAINTIFF'S NAME

[signature]
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1. My name is Trellis S. Jordan.
2. I am a Plaintiff in this action.
3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.
4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs, County of Bullock, State of AL, from approximately Jan. 17, 2003 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.
5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.
6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Trellis S. Jordan
PLAINTIFF'S NAME

Trellis S. Jordan
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**DECLARATION:**

1. My name is Felicia Mims.

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs, County of Bullock, State of AL, from approximately 11-09-92 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Felicia Mims
PLAINTIFF'S NAME

[signature]
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**DECLARATION:**

1. My name is Regenia Long.
2. I am a Plaintiff in this action.
3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.
4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately 10-07-80 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.
5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.
6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Regenia Long
PLAINTIFF'S NAME

[signature]
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1. My name is Christine Youngblood

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately Sept. 1984 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Christine Youngblood
PLAINTIFF'S NAME

[signature]
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**DECLARATION:**

1. My name is Laurie A. Willis.

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately 04-18-03 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Laurie A. Willis
PLAINTIFF'S NAME

[signature]
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1. My name is Alan L. Williams Jr.
2. I am a Plaintiff in this action.
3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.
4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately Oct. 28, 1998 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.
5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.
6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Alan L Williamson
PLAINTIFF'S NAME

[signature]
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1. My name is Kennetra S. Wheeler

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs, County of Bullock, State of AL, from approximately 06-2003 until 02-17-04. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 11 day of February, 2007.

KennetrA S. Wheeler
PLAINTIFF'S NAME

Kennetra S. Wheeler
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 11th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**DECLARATION:**

1. My name is Terrance Warmack.
2. I am a Plaintiff in this action.
3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.
4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately Jan. 17, 2006 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.
5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.
6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 11 day of February, 2007.

Terrance Warmack
PLAINTIFF'S NAME

Terrance Warmack
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 11th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1. My name is Tony Toliver.

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately Aug. 24, 1994 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Tony Tolliver
PLAINTIFF'S NAME

[signature]
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1. My name is Peggy Pitts.

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately Sept. 22, 1972 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Peggy Pitts
PLAINTIFF'S NAME

[signature]
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1. My name is Betty J. Randolph.

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately 03-16-76 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Betty J. Randolph
PLAINTIFF'S NAME

X Betty J. Randolph
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**DECLARATION:**

1. My name is Lanethia Still.
2. I am a Plaintiff in this action.
3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.
4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately Aug. 19, 1997 until Jan. 13, 2006. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.
5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.
6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Lanethia Still
PLAINTIFF'S NAME

Lanethia Still
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1. My name is Sherry Tarver.
2. I am a Plaintiff in this action.
3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.
4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately July 1999 until Dec. 2003. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.
5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.
6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 11 day of February, 2007.

Sherry Tarver
PLAINTIFF'S NAME

[signature]
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 11th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**DECLARATION:**

1. My name is Teresa Comer.

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately March 12, 1996 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Teresa Comer
PLAINTIFF'S NAME

Teresa Comer
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**DECLARATION:**

1. My name is Benjamin J Curry Jr

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately Jan 5, 1996 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Benjamin F Curry Jr
PLAINTIFF'S NAME

[signature]
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1. My name is Santana McClendon.
2. I am a Plaintiff in this action.
3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.
4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately 10-20-05 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.
5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.
6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Santana McClendon
PLAINTIFF'S NAME

Santana McClendon
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**DECLARATION:**

1. My name is Aggie L. Scott.

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately January 1976 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Aggie Lee Scott
PLAINTIFF'S NAME

Aggie Lee Scott
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**DECLARATION:**

1. My name is Mary J. Washington

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately 08-17-76 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Mary J. Washington
PLAINTIFF'S NAME

X Mary J. Washington
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**DECLARATION:**

1. My name is Callie Williams.

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately March 27, 1998 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Callie Williams
PLAINTIFF'S NAME

Callie Williams
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1. My name is Sharon Biggers.
2. I am a Plaintiff in this action.
3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.
4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately 11-29-91 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.
5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.
6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Sharon Biggers
PLAINTIFF'S NAME

[signature]
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**DECLARATION:**

1. My name is Kimberlyn D. Sparks.

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately 07-21-98 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Kimberlyn D. Sparks
PLAINTIFF'S NAME

[signature]
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**DECLARATION:**

1. My name is Janchia Smith.

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs, County of Bullock, State of AL, from approximately January 2003 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Janckia Smith
PLAINTIFF'S NAME

[signature]
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**DECLARATION:**

1. My name is Dianne Patterson

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately 09-21-93 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Dianne Patterson
PLAINTIFF'S NAME

[signature]
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**DECLARATION:**

1. My name is Marcus Oree.
2. I am a Plaintiff in this action.
3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.
4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs, County of Bullock, State of AL, from approximately 12-18-96 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.
5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.
6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

MARCUS OREE
PLAINTIFF'S NAME

Marcus A. Oree
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**DECLARATION:**

1. My name is Sallie A. Jernigan.
2. I am a Plaintiff in this action.
3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.
4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs, County of Bullock, State of AL, from approximately 12-16-92 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.
5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.
6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10th day of February, 2007.

Sallie A. Jernigan
PLAINTIFF'S NAME

[signature]
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1. My name is Mary E Iney.
2. I am a Plaintiff in this action.
3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.
4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately Aug. 14, 1991 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.
5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.
6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Mary E Lacey
PLAINTIFF'S NAME

Mary Lacey
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**DECLARATION:**

1. My name is Peggy Howard.
2. I am a Plaintiff in this action.
3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.
4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately 04/29/1991 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.
5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.
6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Peggy Howard
PLAINTIFF'S NAME

Peggy Howard
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**DECLARATION:**

1. My name is Arlene Bronson.
2. I am a Plaintiff in this action.
3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.
4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs, County of Bullock, State of AL, from approximately 05-23-91 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.
5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.
6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Arlene Bronson
PLAINTIFF'S NAME

[signature]
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**DECLARATION:**

1. My name is John W Scott

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately 03-02-00 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

John W. Scott
PLAINTIFF'S NAME

[signature]
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1. My name is Helen Tarver.
2. I am a Plaintiff in this action.
3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.
4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately Oct. 25, 1971 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.
5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.
6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Helen Tarver
PLAINTIFF'S NAME

Helen Tarver
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

**DECLARATION:**

1. My name is Tiffany M.P. King.
2. I am a Plaintiff in this action.
3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.
4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately June 8, 2001 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.
5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.
6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 11 day of February, 2007.

Tiffany M P King
PLAINTIFF'S NAME

[signature]
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 11th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011

# DECLARATION:

1. My name is Tommy Hampton.

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Union Springs County of Bullock, State of AL, from approximately 04-19-01 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 10 day of February, 2007.

Tommy Hampton
PLAINTIFF'S NAME

Tommy Hampton
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,
COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

NOTARY PUBLIC

My Commission Expires: 01/17/2011